Rachel E. Kaufman (CSB# 259353)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
Email: Rachel@kaufmanpa.com

*Attorney for Plaintiff and the Proposed Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **WILLIAM FRANCIS ELLWOOD,** individually, **EITAN BARR,** individually, and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> *v.* <br><br> **NETWORK CAPITAL FUNDING CORPORATION**, a Nevada company, <br><br> *Defendant.* | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff William Francis Ellwood ("Ellwood" or "Plaintiff Ellwood") and Plaintiff Eitan Barr ("Barr" or "Plaintiff Barr") bring this Class Action Complaint and Demand for Jury Trial against Defendant Network Capital Funding Corporation doing business as Network Capital ("Defendant" or "Network Capital"), to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") and

the Florida Telephone Solicitation Act ("FTSA") by making unsolicited calls to consumers who registered their phone numbers on the National Do Not Call Registry ("DNC") and to otherwise obtain injunctive and monetary relief for all persons injured by Defendant's actions. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1.      Plaintiff Ellwood is a San Bernardino, California resident.

2.      Plaintiff Barr is a Brandon, Florida resident.

3.      Defendant Network Capital is a Nevada corporation headquartered in Irvine, California. Network Capital conducts business throughout this District, California, and the United States.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"). The Court has supplemental jurisdiction over the FTSA claims because they arise from the same telemarketing campaign.

5.      This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in this District and conducts business in California, including in this District, and the wrongful

conduct leading to this case was directed by Defendant to the Plaintiffs from this District.

## INTRODUCTION

6.     As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  *See* 47 C.F.R. § 64.1200(c)(2).

8.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator."  *Id*.

9.     When Congress enacted the TCPA in 1991, it found Americans were receiving more than 18 million calls every day. 105 Stat. 2394 at § 2(3).

10.   By 2003, due to more powerful autodialing technology, Americans were receiving more than 100 million calls every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11.   The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12.   Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

13.   According to online robocall tracking service "YouMail," 4.3 billion robocalls were placed in June 2022 alone, at a rate of 144.3 million calls per day. www.robocallindex.com. (Last checked August 1, 2022).

14.   The FCC also has received an increasing number of complaints about unwanted calls, with over 150,000 complaints in 2020, and over 160,000 complaints in 2021. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

15.   "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

16.   "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

17.   Defendant Network Capital is a direct mortgage lender and service provider conducting business throughout the U.S.[3]

18.   Defendant Network Capital makes telemarketing calls to consumers to solicit its financial services to the consumers.

19.   Defendant Network Capital makes telemarketing calls to residential telephone consumers whose numbers are registered on the Do Not Call registry, who have never provided their phone number to Defendant, and who never consented to receive phone calls from the Defendant.

20.   For example, Plaintiff Ellwood and Plaintiff Barr received multiple calls from Network Capital despite never having given their phone numbers to Defendant and despite having their phone numbers registered on the DNC to prevent such cold calls.

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/network-capital-funding-corporation/about/

21.     Defendant Network Capital hires employees to place telemarketing cold calls. Several Network Capital employees have posted their experiences of Network Capital directing them to make cold calls.

### Dog Eat Dog Environment

Junior Mortgage Banker (Former Employee) - New York, NY - March 22, 2022

Very much a revolving door where you can and most likely will be replaced if there is any kind of negative performance even if you typically perform well. Constant pressure even for a sales job. All cold calling uninterested leads that hardly ever have the time to talk to you. Toxic fratty-type environment with music blaring throughout the office while you try to make calls. Little guidance and as stated earlier there is constant turnover (even in management). That's all I can say for my experience, but maybe others feel it is worth it for the chance of low commission percentage off of mortgage products sold.[4]

### Insane Work, Minimal Compensation

Senior Mortgage Banker (Former Employee) - New York, NY - November 23, 2021

This place is a classic Refinance shop, old school paid leads, bang the cold calls and "warm transfers." Produce or get fired type environment. You'll close loans, especially when rates are low. But don't expect any money for them, until you hit 2 million plus consistently. Until then, you get minimum a wage draw, and receive $100 a loan.

✓ **Pros**

Gain experience in Sales and Mortgage for your Resume.

✗ **Cons**

Not rewarding, Sweat shop feel[5]

### Do not work here such a horrible place

Mortgage Intern (Former Employee) - Irvine, CA - October 29, 2021

Please take my advice and do not work here. I was hired for the mortgage banker intern program. They pay you minimum wage and you work 10-12 hour days cold calling the whole time. They claim they are hot leads but they are not. Be prepared to be cursed out on the phone and have people question how you got their number. They give you NO training for your NMLS exam or studying time like they claim they're going to give you in the recruiting process. All coworkers I had were there about 2 months or less so it says a lot about their turnover rate and company culture. STEER CLEAR.[6]

---

[4] https://www.indeed.com/cmp/Network-Capital-Funding-Corporation/reviews?fcountry=ALL
[5] *Id.*
[6] *Id.*

- Interns make 500-600 outbound cold calls per day (the Intern program lasts 1.5 to 3 months while you get licensed). Just because you make it through the intern program doesn't mean the job gets any easier.

- • - The banking side is like a free-for-all for leads and deals.   [7]

22.    Many consumers have posted complaints online regarding unsolicited

telemarketing calls that they received from Defendant Network Capital, for instance:

- • "I keep getting daily calls from this business through random numbers wanting to speak to "****". I do not know who "****" is and I have already told the representatives to stop calling and to place me in a do not call list, but I still receive calls wanting to speak to "****". I am registered into the FTC's Do Not Call list and this calling behavior can be considered unsolicited and a violation. Numbers include ********************5, **********, **********, **********, etc. Very unethical." [8]

- • "Network Capital Funding Corporation calls my phone daily, sometimes more than once a day, from multiple numbers. I have blocked them each time, and have them on the list of known entities (by name) to be blocked, so I am aware of every call. I have never done business with them, and have no idea how they obtained my information, unfortunately, Im sure its easy to do, and thats what bothers me the most because this company is now using that to their advantage, and harassing me every single day." [9]

- • "I got a cold call from them. They call me every day. The first time I answered and told the person to stop calling me. Now it rings and no one is there. I block each number that calls. They have called from a different number every day. I do not understand why this tactic is legal/moral/ethical. This is not how a legitimate business operates."[10]

- • "I have asked repeatedly for them to stop calling me. I am not interested I block the number but then their number changes and they call the very next day. This has become harassment at this point and needs to stop. They told

[7] https://www.glassdoor.com/Reviews/Network-Capital-call-center-Reviews-EI_IE691419.0,15_KH16,27.htm
[8] https://www.bbb.org/us/ca/irvine/profile/mortgage-banker/network-capital-funding-corporation-1126-13195061/complaints
[9] Id.
[10] https://www.bbb.org/us/ca/irvine/profile/mortgage-banker/network-capital-funding-corporation-1126-13195061/complaints

CLASS ACTION COMPLAINT

me for them to take me off the list I had to provide them some information first before the could, i declined obviously and hung up." [11]

- "My phone number is on the National Do Not Call List however I have been received consistent phone calls, usually 3-5 a day, from this company. I have never requested information from them regarding refinancing or any other matter. I want the calls to stop. There is no point in blocking the number as they call from a different number almost every time." [12]

- "It has reached the point of harassment. This company calls several times a day. I have blocked them and they keep using different numbers. I would like this company to stop calling me ASAP. I have asked to be put on the do not call list and they just hang up on you and keep calling." [13]

- "Do not trust. I had multiple cold calls from this company and the lies where so think you could cut them with a knife. Zero Stars!" [14]

- "Robocall – Refinance" [15]

- "Unsolicited call" [16]

- "Trying to get me to refi my home loan. They called my cell 6 times and it was a recording that left a message." [17]

- "Constant non-stop spam call, morning, afternoon and evening. Doesn't matter of you tell them you're not interested and to please stop calling. They do it anyway. These people have no boundaries and no respects for you." [18]

- "This terrible company robocalls the absolute heck out of my work phone.  I would never work with them or anything related.  Past two days

---

[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] https://www.google.com/search?q=%22Network+Capital+Funding+Corporation
[15] https://www.shouldianswer.com/phone-number/9497347046
[16] *Id.*
[17] *Id.*
[18] https://www.yelp.com/biz/network-capital-funding-corporation-irvine-3?start=40

I've had 30+ spam calls even after requesting to remove my number from the list." [19]

- ""NETWORK CAPITAL FUNDING" - if legit likely a robo call refi outfit.  I pressed "9" to be removed from their call list." [20]



[21]

- 

## PLAINTIFF ELLWOOD'S ALLEGATIONS

23.    Plaintiff Ellwood's phone number ending xxx-xxx-5668 has been registered on the DNC since August 13, 2013.

24.    Plaintiff Ellwood uses his phone number for personal and residential purposes only.

---

[19] *Id.*
[20] https://800notes.com/Phone.aspx/1-949-438-5295
[21] https://www.yelp.com/biz/network-capital-funding-corporation-irvine-3?start=40

25.     Plaintiff Ellwood has never conducted any business with Defendant Network Capital, nor has he given his consent to receive telemarketing calls from or on behalf of Defendant Network Capital.

26.     In April 2022, Plaintiff started receiving unsolicited telemarketing calls from Defendant Network Capital using phone numbers with the area code 909.

27.     On April 18, 2022, at 2:02 PM, Plaintiff received a call from the phone number 909-737-6715 to his cell phone. Plaintiff answered the call and spoke to a Kevin from Defendant Network Capital who tried to offer refinancing options to the Plaintiff. Kevin asked the Plaintiff what he thought the value of his home was, and if he was interested in refinancing. To find out the company on whose behalf the solicitation call was placed, Plaintiff asked Kevin for their company's website and Kevin provided the website: www.NetworkCapital.com. Kevin then transferred the Plaintiff to Chris Evans who asked if he could send some information to the Plaintiff. Plaintiff Ellwood denied their request indicating that he did not wish to receive any further information from the Defendant and disconnected the call.

28.     On calling this phone number, 909-737-6715, an automated voice system provides some options, and on pressing 1, it connects the callers to an employee of Defendant Network Capital.

29.     On April 22, 2022, at 3:04 PM, Plaintiff received another call to his cell phone from the Defendant using the phone number 909-765-5408. Plaintiff did not answer this call.

30.     Again on April 25, 2022 at about 10:30 AM, Plaintiff received another call from Defendant Network Capital using the same phone number 909-765-5408. Plaintiff answered the call and spoke to Defendant's employee Elizabeth who was calling to offer refinancing options to the Plaintiff. Elizabeth referenced her colleague who had called the Plaintiff the previous week and was wondering if Plaintiff was interested in Defendant's refinancing services. Plaintiff informed Defendant's employee Elizabeth that he had informed her colleague that he was on the Do Not Call list, indicating that he did not wish to receive calls from or on behalf of Defendant Network Capital. Elizabeth ignored his request and continued to ask him if he would be interested in their refinancing options. Plaintiff disconnected the call.

31.     On April 25, 2022, at 3:06 PM, Plaintiff received another call from Defendant Network Capital using the phone number 909-765-5498. Plaintiff answered the call and spoke to Defendant's employee Isaac. Plaintiff re-iterated to Isaac that his phone number was on the Do Not Call List. Isaac responded that he understood that, but went on to inquire if he could send some information regarding

Defendant's refinancing options to the Plaintiff. Plaintiff did not ask to receive any information from or on behalf of the Defendant.

32.     On calling this phone number 909-765-5498, an automated voice system provides some options, and on pressing 1, it connects the callers to an employee of Defendant Network Capital.

33.     Plaintiff Ellwood never consented to receiving solicitation calls from Defendant Network Capital and does not have any existing business relationship with the Defendant.

34.     The unauthorized telephone calls placed by Defendant, as alleged herein, have harmed Plaintiff Ellwood in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

## PLAINTIFF BARR'S ALLEGATIONS

35.     Plaintiff Barr's phone number ending xxx-xxx-1024 has been registered on the DNC since September 19, 2003.

36.     Plaintiff Barr's phone number begins with an 813 Florida area code.

37.     Plaintiff Barr has never conducted any business with Defendant Network Capital, nor has he given his consent to receive telemarketing calls from or on behalf of Defendant Network Capital.

38.    On April 18, 2022, Plaintiff Barr received an autodialed call from the phone number 813-378-3310 to his cell phone. Plaintiff answered the call and spoke to an employee from Defendant Network Capital who tried to offer refinancing options to the Plaintiff. Plaintiff Barr told the employee that he works in mortgages, has been a mortgage loan officer for years and that he should not be receiving such calls. The Network Capital employee confirmed that Plaintiff Barr's cell phone number would be added to a do not call list.

39.    On calling this phone number, 813-378-3310, an automated voice system provides some options, and on pressing 1, it connects the callers to the general voicemail of Defendant Network Capital.

40.    Despite making a clear stop call request, Plaintiff Barr received additional unsolicited telemarketing calls from Defendant Network Capital on June 21, 2022, using the phone number 561-931-4731 and on July 1, 2022, using the phone number 407-904-1864.

41.    On calling phone numbers 561-931-4731 and 407-904-1864, an automated voice system provides some options, and on pressing 1, it connects the callers to the general voicemail of Defendant Network Capital.

42.    On July 5, 2022, Plaintiff Barr received an autodialed call from the phone number 727-274-9321 to his cell phone. Plaintiff answered the call and spoke to an employee from Defendant Network Capital who tried to offer refinancing

options to the Plaintiff. Plaintiff Barr told the employee that he works in mortgages and once again requested that the calls stopped. As with the April 18, 2022, call, Plaintiff Barr was told that his cell phone number would be added to their do not call list.

43.     On calling this phone number, 727-274-9321, an automated voice system provides some options, and on pressing 1, it connects the callers to the general voicemail of Defendant Network Capital.

44.     Despite making a second clear stop call request, Plaintiff Barr received additional unsolicited telemarketing calls from Defendant Network Capital on July 7, 2022, using the phone number 321-559-0398,  July 8, 2022, using the phone number 321-326-1873; and again, on July 8, 2022, using the phone number 386-221-8190.

45.     On calling phone numbers 321-559-0398, 321-326-1873 and 386-221-8190, an automated voice system provides some options, and on pressing 1, it connects the callers to the general voicemail of Defendant Network Capital.

46.     Plaintiff Barr never consented to receiving solicitation calls from Defendant Network Capital and does not have any existing business relationship with the Defendant.

47.     The unauthorized telephone calls placed by Defendant, as alleged herein, have harmed Plaintiff Barr in the form of annoyance, nuisance, and invasion

of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

48.     Seeking redress for these injuries, Plaintiff Ellwood and Plaintiff Barr, on behalf of themselves and Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., and the Florida Telephone Solicitation Act, Fla. Stat. § 501.059, et seq.

## CLASS ACTION ALLEGATIONS

49.     Plaintiffs brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

**TCPA Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf of Defendant, called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff Ellwood.

**Florida Autodial Class:** All persons in Florida, who, on or after July 1, 2021, (1) received a telephonic sales call regarding Defendant's goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff Barr.

**Florida No Solicitation Calls Class:** All persons in Florida, who, on or after July 1, 2021, (1) whose telephone numbers appear on the then-current "no sales solicitation calls" list, and (2) who received unwanted telephonic sales call from or on behalf of the Defendant.

**Florida Stop Request Class:** All persons in Florida, who, on or after July 1, 2021, (1) Defendant (or an agent acting on behalf of the Defendant) called more than one time, (2) within any 12-month period, (3) for substantially the

same reason Defendant called Plaintiff Barr, including (4) at least one call after they requested that Defendant stop calling.

50.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiffs anticipate the need to amend the Class definitions following appropriate discovery.

51.     **Typicality and Numerosity**: Plaintiff Ellwood is a member of the TCPA Do Not Call Registry Class, Plaintiff Barr is a member of the Florida Classes, and on information and belief, there are hundreds, if not thousands of members of the Classes, all of which received calls from Defendant as part of a single telemarketing campaign, and joinder of all members is impracticable.

52.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes.

Common questions for the Classes include, but are not necessarily limited to the following:

(a)    whether the Defendant or an agent calling on behalf of Defendant placed multiple calls within a 12-month period to Plaintiff Ellwood and other consumers whose telephone numbers were registered with the National DNC for at least 30 days at the time of each call;

(b)    whether the Defendant or an agent calling on behalf of Defendant placed one or more solicitation calls to Plaintiff Barr and other consumers whose telephone numbers appeared on the-then current "no sales solicitation calls" list at the time of each call;

(c)    whether Defendant made telemarketing calls without first obtaining prior express written consent;

(d)    whether the calls violated the TCPA and the FTSA;

(e)    whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

53.    **Adequate Representation**: Plaintiff Ellwood and Plaintiff Barr will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in class actions. Plaintiffs have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting

this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to the Classes.

54.    **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, and thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff Ellwood or Plaintiff Barr. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Ellwood and the TCPA Do Not Call Registry Class)**

55.     Plaintiff Ellwood repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

56.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

57.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

58.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Ellwood and the TCPA Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

59.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Ellwood and the TCPA Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

60.     As a result of Defendant's conduct as alleged herein, Plaintiff Ellwood and the TCPA Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for each of such violations of 47 C.F.R. § 64.1200.

61.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the TCPA Do Not Call Registry Class.

### SECOND CLAIM FOR RELIEF
**Florida Telephone Solicitation Act**
**(Violation of Fla. Stat. § 501.059)**
**(On Behalf of Plaintiff Barr and the Florida Autodial Class)**

62.     Plaintiff Barr repeats and realleges paragraphs 1 through 54 of this Complaint and incorporates them by reference herein.

63.     Plaintiff Barr brings this claim individually and on behalf of the Florida Autodial Class Members against Defendant.

64.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

65.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

66.     Defendant failed to secure prior express written consent from Plaintiff Barr and members of the Florida Autodial Class.

67.     In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff Barr and the Florida Autodial Class members without Plaintiff's and the Class members' prior express written consent.

68.     Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff Barr and the Florida Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

69.     As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff Barr and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff Barr and the Class members are also entitled to an injunction against future calls. *Id.*

### THIRD CLAIM FOR RELIEF
**Florida Telephone Solicitation Act**
**(Violation of Fla. Stat. § 501.059)**
**(On Behalf of Plaintiff Barr and the Florida No Solicitation Calls Class)**

70.     Plaintiff Barr repeats and realleges paragraphs 1 through 54 of this Complaint and incorporates them by reference herein.

71.     Plaintiff Barr brings this claim individually and on behalf of the Florida No Solicitation Calls Class Members against the Defendants.

72.     It is a violation of the FTSA to "make or cause to be made any unsolicited telephonic sales call to any residential, mobile, or telephonic paging device telephone number if the number for that telephone appears in the then-current quarterly listing published by the department." Fla. Stat. § 501.059(4).

73.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation

of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

74.    In violation of the FTSA, Defendant made and/or caused to be made unsolicited telephone sales calls to Plaintiff Barr, and other members of the Florida No Solicitation Calls Class despite their telephone numbers appearing on the quarterly listing published by the department.

75.    As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff Barr and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff Barr and the Class members are also entitled to an injunction against future calls. *Id.*

## FOURTH CLAIM FOR RELIEF
### Florida Telephone Solicitation Act
### (Violation of Fla. Stat. § 501.059)
### (On Behalf of Plaintiff Barr and the Florida Stop Request Class)

76.    Plaintiff Barr repeats and realleges paragraphs 1 through 54 of this Complaint and incorporates them by reference herein.

77.    Plaintiff Barr brings this claim individually and on behalf of the Florida Stop Request Class Members against Defendant.

78.    The FTSA prohibits "a telephone solicitor or other person" from initiating "an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated

to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission, made by or on behalf of the seller whose goods or services are being offered." Fla. Stat. § 501.059(a).

79.    A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

80.    Defendant failed to ensure that its agents recorded the consumers request to not receive any telephone solicitation call from or on behalf of Defendant, and to stop initiating any outbound telephonic sales call to such consumers.

81.    In violation of the FTSA, Defendant initiated multiple outbound solicitation calls to Plaintiff Barr, and other members of the Florida Stop Request Class, who had previously communicated to Defendant that they did not wish to receive any solicitation calls from or on behalf of Defendant.

82.    As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff Barr and Class members were harmed and are each entitled

to a minimum of $500.00 in damages for each violation. Plaintiff Barr and the Class members are also entitled to an injunction against future calls. *Id.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Ellwood and Barr individually and on behalf of the Classes, pray for the following relief:

a) An order certifying this case as a class action on behalf of the Classes, as defined above; appointing Plaintiffs Ellwood and Barr as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA and the FTSA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs Ellwood and Barr request a jury trial.

Respectfully Submitted,

**WILLIAM FRANCIS ELLWOOD**, individually, **EITAN BARR,** individually, and on behalf of those similarly situated individuals

---

CLASS ACTION COMPLAINT
-25-

DATED this 15th day of August, 2022.

By: /s/ *Rachel E. Kaufman*
Rachel Elizabeth Kaufman
Kaufman P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
(305) 469-5881
Email: Rachel@kaufmanpa.com

*Attorney for Plaintiff and the putative Class*